925 F.2d 1465
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Daniel D. TRIFELOS, Plaintiff-Appellant,
v.
GENERAL TIRE, INC., Defendant-Appellee.
 No. 90-3541.
 United States Court of Appeals, Sixth Circuit.
 Feb. 20, 1991.
 
 Before MILBURN and RALPH B. GUY, Jr., Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Daniel Trifelos appeals the summary judgment granted by the district court in favor of defendant General Tire, Inc., in this action brought under the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621-634. For the reasons that follow, we affirm.
 
 I.
 
 2
 Trifelos commenced this action by filing a complaint that alleged that he had not been rehired by General Tire because of his age. The district court, after reviewing the pleadings, supporting affidavits, depositions, interrogatories, and other documents filed by the parties, and after construing the evidence most favorably to the appellant, found that Trifelos failed to establish a prima facie case of age discrimination and therefore granted summary judgment to General Tire.
 
 
 3
 Daniel Trifelos is a white male who was forty-nine years of age at the time the alleged discriminatory conduct by General Tire took place. He began his employment with General Tire in 1981 as an industrial engineer in the Manufacturing Administration Department of the plant in Akron, Ohio. His work records and performance evaluations show that he was a fully satisfactory employee of the company.
 
 
 4
 In March 1987, General Tire was the wholly-owned subsidiary of GenCorp, Inc. In order to raise money to defeat a hostile takeover attempt, GenCorp, Inc. sold off certain of its subsidiaries including General Tire. To make the subsidiary more attractive to prospective purchasers, a restructuring was ordered so as to fatten some departments and thin others. In this restructuring, the Department of Manufacturing Services where Trifelos worked was abolished. Of its ten employees, four, all over the age of forty, were transferred to another department. The remaining six, including Trifelos and the department's director, were offered three options: early retirement, layoff, or termination status. Trifelos was the only one of the department employees to select the layoff status option. According to corporate policy, an employee in layoff status received severance pay, continued to receive employee benefits for two years, and would be given credit for all service prior to the layoff in the event he or she were rehired within five years. This corporate policy, known as Policy P-21, contained as its final section the following:
 
 
 5
 Nothing contained in this policy implies or guarantees any right of rehire, seniority preference in any rehire, or any other right of employment to any individual.
 
 
 6
 Trifelos asserts that, shortly before his last day of work on May 31, 1987, he was given an exit interview by a company spokesman who explained to him that, upon electing layoff status, he would have the right of recall to the first available industrial engineering position or comparable job. Trifelos claims he never saw or heard of Policy P-21 and its exclusion of any right of rehire.
 
 
 7
 On February 15, 1988, James Gambrel, a Senior Industrial Engineer at General Tire's Mt. Vernon, Illinois, plant was promoted and temporarily transferred to the Akron, Ohio, plant in order to keep a competitor from attempting to hire him. On June 1, 1988, Gambrel was transferred from the Akron plant to the company's facility in Charlotte, North Carolina, having remained in Akron for three and one-half months. Over a month after Gambrel was transferred from the Akron plant to the Charlotte plant, Trifelos, on July 5, 1988, filed his charge of discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC"). The gravamen of the charge was that Gambrel had been transferred to Akron to take a position that Trifelos should have been rehired into.[1]
 
 
 8
 Not included in the discrimination charge brought before the OCRC and EEOC, but raised in the district court, were two other hires which allegedly showed General Tire's discrimination against the appellant. David Harpstrite was hired by General Tire on June 5, 1989, to fill the position of Engineer V--Industrial at a pay rate of $4,450 per month. On August 22, 1988, the company hired Christine Cales into the position of Engineer II--Mechanical. Both of these persons were under the age of forty.
 
 
 9
 On appeal, the issue is whether or not the district court was correct in concluding that there were no issues of material fact in dispute and that General Tire was entitled to judgment as a matter of law.
 
 II.
 
 10
 We review the granting of a motion for summary judgment de novo. Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.) cert. denied, 488 U.S. 880 (1988). Summary judgment for a defendant is appropriate where the plaintiff fails to make a sufficient showing regarding an essential element of his case with respect to which he has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
 
 
 11
 Not every factual dispute will create a genuine issue of material fact. Where the evidence presented in opposition to summary judgment is "merely colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir.1989).
 
 
 12
 In analyzing the evidence available to it on motion for summary judgment, a district court must take into consideration the substantive law of the case, particularly the elements of an asserted claim or defense. Where the motion is made by the defendant in the case, the district court will find it necessary to analyze the plaintiff's proffered evidence with a view to determining whether or not that evidence can carry plaintiff's burden of proving all of those elements.
 
 
 13
 In this case there was no offer of any direct evidence of age discrimination, such as remarks in the workplace or pernicious patterns of hiring and firing by General Tire. Instead, Trifelos seeks to defend against the motion for summary judgment by establishing a prima facie case of age discrimination under standards similar to those set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Altered slightly to fit the facts of this case, those standards require Trifelos to show that (1) he was a member of a protected class; (2) he was available for recall to a job but was not recalled; (3) he was qualified for the job in question; and (4) the employer hired a person outside the protected class for that job.
 
 
 14
 When the district court applied the above standards to the facts of this case, it found that, while the first two standards had been met, the last two had not. It observed that neither party had offered evidence concerning the job description of the positions filled by Trifelos, Harpstrite, Cales or Gambrel, and this made it impossible for the district court to determine whether Trifelos was qualified to fill the positions eventually occupied by Harpstrite, Cales or Gambrel or whether Harpstrite, Cales or Gambrel had been hired into a position that even approximated Trifelos' old job. Indeed, such evidence as there was seemed to point the other way. Trifelos' job title had been Engineer IV--Industrial, and he was paid at the rate of $3,769 per month. Harpstrite, who was hired on June 5, 1989, almost a year after Trifelos had filed his EEOC claim, was an Engineer V--Industrial and rated $4,450 per month. Cales, hired on August 22, 1988, held the position of Engineer II--Mechanical. Considering these differences in title and pay, it was logical for the district court to find that Trifelos had failed to prove that either Harpstrite or Cales had obtained "his" job, particularly since there was nothing in the record--not even an allegation--to show that Harpstrite's and Cales' job titles were illegitimate or manipulated in any way. With regard to the positions held by Harpstrite and Cales, Trifelos failed to prove that he was qualified for either of their jobs,[2] and he also failed to prove that either of them had been hired into his old job. Thus, the district court found that Trifelos failed to prove a prima facie case of discrimination based on General Tire's hiring of Harpstrite and Cales.
 
 
 15
 As to the claim that the transfer of Gambrel from the Illinois plant to the Charlotte plant by way of the Akron plant constituted evidence of age discrimination, the district court found that there was "no evidence that this temporary assignment was anything more than a holding pattern." The affidavit of General Tire's Director of Personnel, submitted in support of its motion for summary judgment, recited how General Tire kept Gambrel from accepting another offer of employment by promoting him and transferring him temporarily to the Akron plant until a permanent job opened up for him at the Charlotte plant. This evidence was not seriously challenged by Trifelos, who in response to it made only a conclusory argument that there was "a clear dispute as to the defendant's claim that Gambrel was only temporary in his employment at Akron's facility." His only effort to support this argument was an assertion that "Gambrel was transferred at the same time when plaintiff filed his charge of discrimination." The facts show that Gambrel was transferred from Akron to the Charlotte plant more than a month before Trifelos filed his EEOC claim.
 
 
 16
 Trifelos, therefore, failed to present any colorable proof to show that General Tire's explanation of Gambrel's presence in Akron was untrue. With respect to his claim based on Gambrel's short presence in Akron, he failed to show that General Tire had a job vacancy that Trifelos could have been recalled to fill. Rather, the proof showed that Gambrel was only temporarily employed at Akron on his way to his permanent job in North Carolina. Therefore, as the district court concluded, Trifelos failed to establish a prima facie case of discrimination or, looked at another way, he failed to respond adequately to General Tire's explanation that Gambrel's temporary presence in Akron did not mean that a job suitable for Trifelos was available and that a person outside the protected class had been hired to fill it. Thus, no genuine issue of material fact was presented.
 
 
 17
 Both in his arguments in the district court and on appeal, Trifelos seems to insist that this case turns on the parties' knowledge and understanding of Policy P-21, which contained a provision stating that employees terminated during curtailments or reductions in force had no right to be rehired. The district court did not invoke this policy at any point in its decision and hardly mentioned it except to state that it was irrelevant. What the district court did decide in this case was that Trifelos failed to submit any probative evidence that he was not recalled because of his age. We agree.
 
 III.
 
 18
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Neither agency found probable cause to believe an unlawful discrimination had occurred
 
 
 [2]
 The affidavits of Donald Papp and Dan Blice to the effect that Trifelos was "qualified to do any job in the field of Industrial Engineering" are too broad and conclusory to show that Trifelos was qualified to perform in Harpstrite's job description. There is no evidence delineating Harpstrite's particular job description, and, therefore, there is no possibility of a showing that Trifelos was qualified to fill that job description. Job titles, as distinguished from job descriptions, were presented to the district court, but they are not dispositive of the qualification issue since they may merely denote salary level. The company would be perfectly free, for example, to write the job description of an Engineer II-Mechanical as requiring two years of nuclear engineering experience. In any event, even Harpstrite's title and salary are higher than Trifelos' were, and Cales was not an industrial, but a mechanical, engineer